IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Shupe, | No. CV-13-01052-TUC-JAS (EJM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Cricket Communications, Inc., | |
| Defendant. | |

Before the Court is Defendant Cricket Communications, Inc.'s ("Cricket") Motion to Dismiss Plaintiff Richard Shupe's Third Amended Complaint ("TAC"). (Docs. 26 and 29). The instant lawsuit stems from a cellular phone Mr. Shupe purchased from Cricket in 2013.

Plaintiff's TAC[1] charges Cricket with consumer fraud under A.R.S. § 44-1522 and also alleges a claim for bad faith. Cricket moves for dismissal of the TAC for failure to state a claim under Rule 12(b)(6) and Rule 9(b), and also argues for dismissal based on *res judicata*, because Plaintiff's claims have already been resolved in prior law suits. Cricket also requests attorney's fees incurred in defending this lawsuit.

The motion has been fully briefed. For the reasons stated below, the Magistrate Judge recommends that Defendant's motion to dismiss for failure to state a claim be granted. The Court also recommends that leave to amend the complaint be denied.

---

[1] Previous complaints were dismissed under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure for failure to state a claim.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Richard and Maria Shupe have a history of litigation against Cricket in both state and federal court. The circumstances surrounding these suits began in 2009 when Mrs. Shupe purchased a wireless cellular phone from Cricket. At the time of purchase, Cricket provided Mrs. Shupe with a copy of its Terms & Conditions ("T&C") in the packaging of her cell phone. The T&C are also available on Cricket's website. The T&C contained an arbitration clause and constituted an agreement between Mrs. Shupe and Cricket. In regards to when the agreement would be activated, the relevant part of the T&C stated:

> This is An Important Agreement Regarding the Services We Provide to You. PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY. These Terms & Conditions of Service constitute an agreement between you and the provider of your Cricket service and contain an arbitration clause and other clauses which may affect your legal rights… IMPORTANT: WHEN YOU START SERVICE OR USE THE SERVICE BY, FOR EXAMPLE, PLACING A CALL, SENDING A MESSAGE OR TRANSMITTING DATA ON THE CRICKET WIRELESS SYSTEM … YOU INDICATE YOUR ACCEPTANCE OF THIS AGREEMENT. IN ADDITION, EACH TIME YOU PAY FOR SERVICE FROM US, YOU CONFIRM YOUR ACCEPTANCE OF THE AGREEMENT.

(Doc 29. at 8). The T&C also provided customers an opportunity to opt out of the agreement by returning the phone unused and thus not beginning service with Cricket:

> IF YOU DO NOT WANT TO ACCEPT THIS AGREEMENT, DO NOT START SERVICE OR USE THE SERVICE AND RETURN YOUR WIRELESS DEVICE, UNUSED AND WITH THE ORIGINAL RECEIPT AND ALL PACKAGING AND ACCESSORIES, TO THE STORE WHERE PURCHASED WITHIN THE RETURN PERIOD SET BY THAT STORE FOR A REFUND

*Id*.

Problems arose when Mrs. Shupe allegedly began receiving marketing text messages from Cricket after she had placed her cell phone number on the National Do Not Call Registry. (CV 12-634-CKJ Doc. 1 at 3).

**A. Justice Court Case**

Mr. Shupe filed suit in Arizona Justice Court on April 6, 2010. The lawsuit alleged three separate claims against Cricket: First, a violation of the Telephone Consumer

1  Protection Act, 47 U.S.C. 227 ("TCPA"). This claim was based on more than fifty auto-
2  dialed calls that were made to Mrs. Shupe's cell phone, which Mr. Shupe alleged were
3  illegally made. Second, Mr. Shupe alleged a tort claim of intrusion upon seclusion in
4  violation of Article 1, §8 of the Arizona Constitution which states that "No Person shall
5  be disturbed in his private affairs, or his home invaded without authority of law." Mr.
6  Shupe claimed that the unauthorized calls deprived he and his wife of the quiet
7  enjoyment of their residence. Third, Mr. Shupe alleged a claim of retaliation because
8  after he filed suit, Cricket allegedly disconnected his wife's cell phone.

9  In December 2010, Mr. Shupe transferred the case to Pima County Superior Court
10 because his damage request was in excess of the amount awardable by Justice Court. Mr.
11 Shupe also added his wife as a plaintiff after the case was transferred. When Mrs. Shupe
12 was added to the case, Cricket determined that the action involved a subscriber to its
13 wireless service, and subsequently filed a motion to compel arbitration based on the
14 arbitration provision of its T&C. The Superior Court then granted Mr. Shupe's request to
15 amend his complaint and remove Mrs. Shupe as a party. Cricket then filed a supplement
16 to its motion, arguing that Mr. Shupe would still be subject to arbitration as a third party
17 beneficiary of the T&C. The court agreed and granted Cricket's motion to compel
18 arbitration, and ordered the case stayed until further order of the court. (CV 12-634-CKJ
19 Doc. 4 Ex. D).

20 Mr. Shupe filed a motion for reconsideration of the court's ruling referring the
21 case to arbitration, which was denied. (CV 12-634-CKJ Doc. 4 Ex. E). Mr. Shupe also
22 filed an appeal with the Arizona Court of Appeals; however, the court found that the
23 appeal was seeking review of non-appealable orders, thus the appeal was dismissed. (*Id*.
24 Ex. F). Mr. Shupe then asked Cricket to stipulate to the dismissal of the case due to Mr.
25 Shupe's serious illness. (*Id*. Ex. G). Cricket agreed and the case was dismissed without
26 prejudice on January 2, 2013. (C20110120, Pima Cty. Sup. Ct, Order for Dismissal w/o
27 Prejudice, at 1).
28 …

**B. First District Court Case**

While Mr. Shupe's case was still pending in Pima County Superior Court, Mrs. Shupe filed suit against Cricket in this Court on August 24, 2012. (CV 12-0634-CKJ). Mrs. Shupe alleged that Cricket sent unauthorized text messages to her phone, and claimed she was "knowingly and purposefully deceived" into believing that there were no contracts and also into entering Cricket's arbitration agreement via the T&C. Mrs. Shupe's complaint stated claims for violations of the TCPA, a violation of A.R.S. § 44-1282 (Arizona's telemarketing statute), and several common law infractions including invasion of privacy, fraud in the inducement, and harassment. Mrs. Shupe also alleged a claim for retaliation based on the fact that Cricket disconnected Mrs. Shupe's phone service.

Cricket responded with a motion to dismiss and to compel arbitration. (CV-12-0634-CKJ, Doc 4). In considering whether Mrs. Shupe's claim of fraud in the inducement barred arbitration, this Court found that:

> Shupe makes no statement as to why any reliance on any such advertisements should carry more weight than Shupe's receipt of the Terms & Conditions that stated they constituted an agreement [] Shupe and the provider of her Cricket service, advised Shupe that when she started the service or the use of the service that she was accepting the Terms & Conditions, advised Shupe of the procedure if she did not agree to the Terms and Services, included an arbitration clause, and included a method by which Shupe could reject the arbitration agreement.

(CV-12-0634-CKJ, Doc. 13 at 9). Based on this reasoning, the Court granted Cricket's motion to dismiss and compel arbitration on January 7, 2013.

Mrs. Shupe filed a Motion for Reconsideration on January 14, 2013 and alleged that, when the Court ruled on Cricket's motion to dismiss, the Court had inadvertently failed to consider her rebuttal to her motion to file an amended complaint. In the rebuttal, Mrs. Shupe claimed that she asked the agent at Cricket's authorized dealer's store to show her how to use the cellular phone that she purchased. (CV-12-0634-CKJ, Doc. 16 Ex. 1). The agent removed the phone from its packaging and asked if she would like to have the packaging, to which Mrs. Shupe responded "No." *Id*. at 2. As a result, Mrs.

- 4 -

Shupe argued that "At no time during the purchase of her cell phone, nor thereafter, did the Plaintiff received [sic] a copy of any agreement, nor did the Plaintiff have any knowledge of the agreement, or any reason to believe an agreement existed." *Id*. at 3.

This Court denied Mrs. Shupe's Motion for Reconsideration on February 25, 2013, holding in part that:

> A plain reading of Shupe's statement indicates that she was provided with the packaging, but declined to accept it… Shupe cannot realistically expect that she may reject packaging that comes with a product and then use the lack of knowledge that results from that rejection to support her assertion that the arbitration clause was unconscionable. In other words, contrary to Shupe's assertion that a party cannot reject an arbitration agreement that she has no knowledge of, it is not just what Shupe knew, but what she should have known.

(CV-12-0634-CKJ, Doc. 13 at 9-10). As a result, Mrs. Shupe's claims were compelled to arbitration. *Id*. at 11.

**C. Present Case**

Mr. and Mrs. Shupe filed this action in Pima County Superior Court on July 2, 2013. (Doc. 1 Ex. 1). The original complaint alleged claims for negligent misrepresentation and fraud in the inducement, and was based on Mrs. Shupe's 2009 cellphone purchase. Cricket removed the case to this Court on August 29, 2013 based on diversity jurisdiction under 28 U.S.C. § 1441(b). The Shupes attempted to amend the complaint filed in Superior Court, but their amended complaint was not filed until September 3, 2013, after the case had already been removed to this Court. (*See* Doc. 15 Ex. A).

On September 5, 2013, Cricket filed a motion to dismiss and to compel arbitration. (Doc. 4). Cricket argued that the phone's packaging contained a valid arbitration clause which required the Shupes to attend arbitration to solve disputes. Cricket also argued that the Plaintiffs' claims were barred by *res judicata* because the Shupes had brought these same claims in multiple prior lawsuits, wherein both the state and federal courts had dismissed the claims and compelled the Shupes to arbitrate.

Also on September 5, 2013, the Shupes filed a motion to remand, stating that they

- 5 -

had amended their complaint. (Doc. 5). The amended complaint was attached to the motion and indicated it was prepared for filing in Superior Court, and stated only a claim for negligent misrepresentation. (Doc. 5 Ex. 1). On September 9, 2013, Mr. Shupe filed a notice of error indicating that Mrs. Shupe's name was wrongly included in both the amended complaint and the motion to remand due to a "type-o." (Doc. 10). That same day, Mr. Shupe filed a second amended complaint ("SAC") (Doc. 11), a response to the Defendant's motion to dismiss and compel arbitration, (Doc. 9), and a second motion to remand. (Doc. 12). The SAC was based on Mr. Shupe's purchase of a Cricket cell phone in 2013 and his insistence that he relied on Cricket's promise of "no contracts" and was damaged when he realized that there was an arbitration provision. On September 17, 2013, Cricket filed another motion to dismiss the SAC. (Doc. 13). Finally, on October 15, 2013 Mr. Shupe filed a motion for leave to amend his SAC. (Doc. 19).

The Court denied Cricket's first motion to dismiss as moot because Mr. Shupe had already filed an amended complaint. (*See* Docs. 22 & 23).The Court then granted Cricket's motion to dismiss the SAC because it failed to state a valid claim for relief and because it failed to comply with the Local Rules. The Court further denied both motions to remand and Mr. Shupe's motion to amend/correct his SAC, but granted Mr. Shupe leave to file a TAC.

Mr. Shupe filed his TAC on March 3, 2014. (Doc. 26). Like the SAC, the TAC is based on Mr. Shupe's purchase of a Cricket cellphone in 2013. The TAC alleges that Cricket's radio and television advertisements, which promise "no contracts," are fraudulent and in violation of Arizona's consumer fraud statute, A.R.S. § 44-1522. Mr. Shupe further contends that Cricket acted in bad faith by purposefully making fraudulent, misleading, and deceptive advertisements.

Currently before the court is Cricket's motion to dismiss Mr. Shupe's TAC. (Doc. 29). First, Cricket moves to dismiss the case on the grounds that Mr. Shupe has not met his burden of a well-pleaded fraud complaint under FED R. CIV. P. 9(b). Specifically, Cricket argues that Mr. Shupe's claim fails to make adequate allegations of reliance and

damages. (Doc. 29 at 7).

Second, Cricket claims that further litigation should be barred under the doctrine of *res judicata*. (Doc. 29 at 10). Cricket reasons that there is an identity of claims among the Shupe's lawsuits, and that Mr. Shupe was a non-party in privity to Mrs. Shupe in her prior District Court suit. That case was dismissed and compelled to arbitration, which Cricket states acted as a judgment on the merits. Cricket believes Mr. Shupe has brought the current action in bad faith as an attempt to avoid the arbitration provision of Cricket's T&C.

Finally, Cricket requests attorney's fees pursuant to A.R.S. §12-349 and §12.341.01(A) because the claims are groundless, were brought in bad faith, were made for purposes of delay or harassment, and because this action unreasonably delays the proceeding.[2]

Mr. Shupe requests the Court deny Cricket's motion to dismiss, and, in the alternative, requests the Court grant him leave to "repair his complaint in the interest of justice, and in the interest of the public." (Doc. 31 at 7).

## II.  LEGAL STANDARD

Pursuant to Rule 12(b)(6), the Court may grant a motion to dismiss when the plaintiff fails to state a claim upon which relief can be granted. A complaint must contain a "short and plain statement of the grounds for the court's jurisdiction," a "short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a). While Rule 8 does not demand factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

To survive a motion to dismiss under Rule 12(b)(6), a pleading must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

---

[2] The Court is unclear as to whether Cricket is referring to Mr. Shupe unreasonably delaying the action in this Court, or whether Cricket suggests that this matter is unreasonably delaying proceedings before the arbitration board.

- 7 -

*Twombly*, 550 U.S. 544, 555 (2007). A claim must be plausible, allowing the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678.

The Court must view the complaint in the light most favorable to the nonmoving party, with every doubt resolved on his behalf, and with that party's allegations taken as true. *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). Generally, the court only considers the face of the complaint when deciding a motion under Rule 12(b)(6). *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, even if a document is not attached to the complaint, if it is a matter of public record or central to the claim, the Court may consider the document without converting a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment. *See e.g. Harris v. Cnty. Of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### III.   DISCUSSION

#### A.  Failure to State a Claim

##### 1.   *Consumer Fraud*

Cricket argues that Mr. Shupe has failed to state a valid consumer fraud claim under Rule 9(b) of the Federal Rules of Civil Procedure because Mr. Shupe's complaint lacks sufficient factual statements to support the elements of a fraud claim. "When alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 12(b)(6) also requires that a plaintiff must "state a complaint with enough factual matter (taken as true) to suggest that a valid claim arises." *Twombly*, 550 U.S. at 556.

Arizona's consumer fraud statute provides that:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44–1522(A).

"In order to prevail [on a consumer fraud claim], a plaintiff must show (1) a false promise or misrepresentation made in connection with the sale or advertisement of merchandise, and (2) consequent and proximate injury resulting from the promise." *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 348 (D. Ariz. 2009). "An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information." *Kuehn v. Stanley*, 208 Ariz. 124, 129 (Ct. App. 2004).

The reliance element is paramount to the analysis because the injury must occur via the plaintiff's reliance on the defendant's misrepresentation; thus, a claim that cannot show reliance necessarily fails. *Peery v. Hansen*, 120 Ariz. 266 (App. 1978). In *Peery*, the court held that "if appellants actually knew that statements in the ad … were false, then they could not have relied on the truth of the representations and would not have been damaged by them." *Id.* at 269-70. However, if "appellants did not actually know such statements were false, though they should have known," then reliance is still present. *Id.* at 270.

In *Schreiber Distribution*, the Ninth Circuit held that a complaint that does not "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation" fails to adhere to the requirements for a fraud claim under Rule 9(b). *Schreiber Distrib. Co. v. Serv-Well Furn. Co*, 806 F.2d 1393, 1401 (9th Cir. 1986). Issues of timing are particularly important because of the statute of limitations, which is one year for consumer fraud claims. A.R.S. § 12-541(3); *Steinberger v. McVey ex rel. County of Maricopa*, 234 Ariz. 125, 142 (App. Div.1 2014). "The statute of limitations 'begin[s] running when the defrauded party discovers or with reasonable diligence could have discovered the fraud.'" *Red River Res., Inc. v. Mariner*

- 9 -

1  *Sys., Inc.*, CV 11-02589-PHX-FJM, 2012 WL 2507517 (D. Ariz. June 29, 2012) (quoting
2  *Mister Donut of Am., Inc. v. Harris*, 150 Ariz. 321, 323 (1986)). Thus, an exact date as to
3  when a misrepresentation was stated is vital.

4        Here, Mr. Shupe's TAC lacks the specific time element required by *Schreiber*. Mr.
5  Shupe alleges that the advertisements in question have occurred "from the years 2009
6  through the present." (Doc. 26 at 2). Further, though Mr. Shupe claims that he viewed
7  Cricket's advertisements "just prior to the purchase of his cell phone" in 2013, he also
8  alleges Cricket has been advertising "no contracts" since "at least the year of 2009."
9  (Doc. 26 at 5, 7). If Mr. Shupe became aware of the fraudulent nature of the
10 advertisements back in 2009, then the current complaint would be well outside of the
11 statute of limitations imposed in A.R.S. § 12-541(3). *See Cornelis v. B & J Smith*
12 *Associates LLC*, CV-13-00645-PHX-BSB, 2014 WL 1828891, *6 (D. Ariz. May 8, 2014)
13 (when plaintiffs alleged they discovered the fraud in 2008 but did not file suit until 2013,
14 their consumer fraud claim was time barred).

15       In addition, Mr. Shupe's claim for fraud lacks both reliance and damages
16 proximately caused by that reliance. Because both Mr. and Mrs. Shupe have been
17 litigating over Cricket's alleged misrepresentations since 2010, it is certain that Mr.
18 Shupe already knew that despite advertising "no contracts," Cricket's cell phones do in
19 fact contain a contract in the form of the T&C. Yet, here in the present case, Mr. Shupe
20 again pleads that Cricket knowingly and purposefully misrepresented its service in 2013
21 as containing "no contracts" when in fact there is a contract. Here, as in *Peery*, if Mr.
22 Shupe knew that the "no contracts" advertisements were false, it is impossible that Mr.
23 Shupe relied on the veracity of those statements and thus Mr. Shupe could not have been
24 damaged by that misrepresentation. Furthermore, when Mr. Shupe purchased his Cricket
25 phone, he was clearly aware of the T&C that came along with purchasing a Cricket phone
26 and using Cricket service because he specifically chose to opt out of the arbitration
27 provision. (Doc. 29 at 8).

28       In sum, in addition to Mr. Shupe's failure to plead a specific time as required by

1  Rule 9(b), there appears to be no set of facts in the range of possibility in which Mr.
2  Shupe could have known that Cricket's representations were false and yet still relied on
3  them, causing him injury. Accordingly, the undersigned recommends dismissal of
4  Plaintiff's consumer fraud claim for failure to state a claim.

  2. *Bad Faith*

Mr. Shupe alleges a claim for bad faith based on Cricket "fraudulently induc[ing] consumers unknowingly into a contract, thereby ignoring their 'duty of care' to be honest and forthright in the creation of their advertisements." (Doc. 26 at 8). This cause of action also fails to state a claim upon which relief can be granted.

Courts are nearly unanimous in rejecting a standalone tort claim for bad faith. Stephen S. Ashley, *Bad Faith Actions Liability & Damages* §11:3 (2d Ed. 2013). While "[t]here is a covenant of good faith and fair dealing inherent in every contract," Arizona allows tort claims for breach of the covenant of good faith and fair dealing only in specific, limited situations. *Thomas v. Wells Fargo Bank, Nat. Ass'n.*, 866 F. Supp.2d 1101, 1106-07 (D. Ariz. 2012). In *Thomas*, the court found that tort recovery for breach of good faith is well-established in insurance contracts, but is otherwise actionable only "where the contract creates a relationship in which the law implies special duties not imposed on other contractual relationships." *Id.* at 1107 (citation omitted); *see also Noble v. Nat. Life Ins. Co.*, 128 Ariz. 188 (1981) (recognizing tort claim for insurer's bad-faith refusal to pay a valid claim). "These relationships are characterized by elements of public interest, adhesion, and fiduciary responsibilities. *Thomas*, 866 F.Supp.2d at 1107. The court further noted that typical lender-borrower and debtor-creditor relationships are not fiduciary in nature. *Id.*

The standard consumer transaction relationship between Cricket and Mr. Shupe is even more distant than that between a lender and borrower, or a creditor and debtor. Mr. Shupe simply purchased a telephone from Cricket and agreed to pay the monthly fee to use it. The relationship between Mr. Shupe and Cricket does not fall into any of the categories of special relationships that would give rise to a claim for tortious breach of

- 11 -

1 the implied covenant of good faith and fair dealing. Moreover, Mr. Shupe has not pled a
2 contract claim and cannot plead a standalone claim for bad faith because such a claim is
3 not recognized by Arizona law. In sum, Mr. Shupe's bad faith claim seems to be just
4 another restatement of his Arizona consumer fraud claim, and because a standalone tort
5 claim for bad faith is not cognizable under Arizona law, it must be dismissed.

      *3.*      *Conclusion*

In conclusion, Mr. Shupe did not and cannot properly plead reliance and damages for his consumer fraud claim, nor does he provide a specific date as to when the misrepresentation occurred. In addition, Mr. Shupe's tort claim for bad faith does not exist under Arizona law absent a special contractual relationship. Accordingly, the Magistrate Judge recommends dismissal of Plaintiff's TAC for failure to state a claim.

**B. *Res Judicata***

Cricket also argues that Mr. Shupe's TAC should be precluded due to *res judicata*. "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979). There are three elements that a defendant must prove for a valid *res judicata* defense: 1) that the claims are in identity with each other, 2) that the parties are either identical or in privity to the parties in a previous claim, and 3) that the previous claim was adjudicated on the merits. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

Claim identity occurs when two suits arise from "the same transactional nucleus of facts." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001). "Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003). Thus, *res judicata* prevents a clever attorney from simply changing the legal label of the suit and continuing to push forward with claims which should have or could have been presented in the prior suit but were not. *Id* at 1077.

1    The second element for a successful res judicata defense is that the parties in the new suit must be either identical to, or in privity with, the parties in the original suit. *Owens*, 244 F.3d at 713. The purpose of the privity element is to ensure that "one who prosecutes or defends a suit in the name of another to establish and protect his own rights, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Montana*, 440 U.S. at 154).

Federal courts have defined the following relationships as providing privity between litigants:

> First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit. Privity has also been found where there is a substantial identity between the party and nonparty, where the nonparty had a significant interest and participated in the prior action, and where the interests of the nonparty and party are so closely aligned as to be virtually representative.

*Id.* (internal citations and quotations omitted).

The third element for a *res judicata* defense is that the previous claim must have been adjudicated on the merits. "Unless the dismissal order states otherwise, a dismissal under [Fed. R. Civ. P. 41(b)] and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as a judgment on the merits." Fed. R. Civ. P. 41(b). Generally a dismissal order will "state otherwise" when the court grants it "without prejudice". *Fidelity & Deposit Co. of Maryland v. Port of Seattle*, 106 F.2d 777 (9th Cir. 1939). The Arizona Supreme Court has held that "[a]n order of dismissal without prejudice is not a final determination of the controversy on its merits, and is no bar to the prosecution of another suit timely commenced, founded upon the same cause of action." *State v. Boehringer*, 16 Ariz. 48, 51 (1914); *see also Vincze v. Robinson*, 103 F. App'x 152, 153 (9th Cir. 2004) ("A dismissal without prejudice is not an adjudication on the merits and does not have res

judicata effect."); *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) ("The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'")..

Pursuant to the Full Faith and Credit statute, 28 U.S.C. § 1738, a state court order is entitled to preclusive effect in federal court as long as that order would be preclusive in state court. *Southeast Resource Recovery Facility Authority v. Montenay Intern. Corp.*, 973 F.2d 711, 712 (9th Cir. 1992). Thus, *res judicata* applies even if a claim is ordered dismissed in state court and then later pled in federal court.

Here, the first element for a *res judicata* defense is met because there is an identity of claims. In Mrs. Shupe's District Court case, she stated a claim for fraud in the inducement based on Cricket's falsely advertising its service as "no contracts." Similarly, Mr. Shupe's TAC alleges Arizona consumer fraud based on the same "no contracts" advertisements. Both of these claims are discussing the exact same nucleus of facts: The fact that Cricket advertised "no contracts" but there was actually a contract in the form of the T&C, which activated when the customer used the service.

The second element for a *res judicata* defense is also met because the parties in the current case and the prior district court case are in privity. Privity exists "where the interests of the nonparty and party are so closely aligned as to be virtually representative." *Schimmels*, 127 F.3d at 881. Here, Mr. Shupe's interests in the current case appear to be so closely aligned to the interests of Mrs. Shupe in her prior district court case that they are identical. Both parties are suing over the exact same reason: an allegedly false advertisement of "no contracts" when in fact there is a T&C contact containing an arbitration clause that the Shupes disagree with. In addition, Mr. Shupe did not purchase a Cricket phone until 2013— three years after he and Mrs. Shupe began litigating against Cricket in Justice Court, and four years after Mrs. Shupe first purchased her Cricket phone. It seems that Mr. Shupe purchased the cell phone specifically to sue Cricket on his own behalf after Mrs. Shupe's District Court case was compelled to arbitration. Furthermore, Mr. Shupe added Mrs. Shupe as a plaintiff in his original Justice

1  Court/Superior Court action, and then later removed Mrs. Shupe as a party. Similarly, Mr. and Mrs. Shupe filed the present action together, and Mr. Shupe again later removed Mrs. Shupe. This constant switching of plaintiffs supports the conclusion that there is a substantial identity between the parties, and that Mr. and Mrs. Shupe have both participated in, controlled, and adequately represented each other's interests in the prior suits. *See Schimmels*, 127 F.3d at 881.

While both an identity of claims and parties are present here, the third element for a successful *res judicata* defense is missing. For a prior court action to be preclusive on a later suit, the first action must have been adjudicated on the merits. Pursuant to Rule 41(b), any dismissals except for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 act as an adjudication on the merits, unless the dismissal order states otherwise. Here, Mrs. Shupe's District Court case was not adjudicated on the merits because it was dismissed without prejudice. (CV 12-0634-CKJ, Doc. 13 at 11). In Arizona, "[a] dismissal without prejudice is not an adjudication on the merits and does not have res judicata effect." *Vincze*, 103 F. App'x at 153. Thus, because the dismissal order from Mrs. Shupe's District Court case was granted without prejudice, the prior action does not act as a bar to Mr. Shupe's current action against Cricket.

In sum, the TAC operates on the same nucleus of facts as Mrs. Shupe's prior District Court case, and the parties are in privity to one another because their interests are so similar as to be virtually representative. However, because the prior District Court case was dismissed without prejudice, it was not adjudicated on the merits. Therefore, the TAC cannot be precluded due to *res judicata*.[3] Nevertheless, even though *res judicata* does not bar the present action, the undersigned still recommends dismissal of Mr. Shupe's TAC for failure to state a claim.

…

---

[3] The Magistrate Judge also finds the original Justice Court/Superior Court action does not bar the present action because although the element of privity is met, the claims in the original action were based on the TCPA, not fraud, thus there is no identity of claims, and the original action was dismissed without prejudice pursuant to stipulation of the parties, so the dismissal was not an adjudication on the merits.

- 15 -

**C. Attorney's Fees**

Cricket requests attorney's fees pursuant to A.R.S. §12-349 and A.R.S. §12-341.01(A). Cricket notes that this is the third action against it arising from the same set of facts, and that it has been awarded attorney's fees in both prior actions. (Doc. 29 at 12).

"In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." A.R.S. §12-341.01(A). Section 12-349 allows the Court to assess reasonable attorney's fees for a party if the other attorney or party:

> 1. Brings or defends a claim without substantial justification.
> 2. Brings or defends a claim solely or primarily for delay or harassment.
> 3. Unreasonably expands or delays the proceeding.
> 4. Engages in abuse of discovery.

A.R.S. § 12-349(A). Here, Cricket argues subsections one, two and three apply based on the fact that the Shupes continue to file groundless suits against Cricket despite admitting that arbitration is the proper forum for these claims. (Doc. 29 at 12). Cricket also asserts that in the prior District Court action, the Shupes threatened to file additional suits against Cricket in an effort to harass Cricket. *Id*. Finally, Cricket alleges Mr. Shupe acted in bad faith in bringing this suit, and that he only initiated service with Cricket in order to litigate the same claims that were compelled to arbitration in the prior suits. *Id*.

The undersigned finds that if Cricket is the prevailing party on this motion, it would likely be entitled to attorney's fees. However, the issue of attorney's fees is not properly before the Court at this time. Once the District Judge enters his order on this Report and Recommendation, and if Cricket is the prevailing party, then Cricket may file its motion for attorney's fees.

**D. Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure provides for one free amendment within 21 days of the filing of the original complaint. Fed. R. Civ. P. 15(a). After this deadline, or once the first amendment has been filed, a party may amend its pleading

- 16 -

1  "only with the opposing party's written consent or the court's leave. The court should
2  freely give leave when justice so requires." *Id*.

3  A pro se litigant should be given an opportunity to amend the complaint to
4  overcome a deficiency unless it is clear that no amendment can cure the defect. *Schucker*
5  *v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988). However, "[a]lthough the rule
6  should be interpreted with 'extreme liberality,' leave to amend is not to be granted
7  automatically." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

8  In the instant case, the undersigned recommends that further leave to amend would
9  be futile. Mr. Shupe has already filed multiple amended complaints, yet has been unable
10 to cure the deficiencies in his claims. Furthermore, Mr. and Mrs. Shupe have made
11 similar allegations in other lawsuits in this Court and Pima County Superior Court, and
12 those cases were dismissed and compelled to arbitration.

13 As to Mr. Shupe's consumer fraud claim, not only has Mr. Shupe failed to
14 properly plead reliance and damages, it appears that he cannot do so. Mr. Shupe brought
15 this action three years after filing his suit against Cricket in Arizona Justice Court, and
16 less than one year after his wife filed her suit against Cricket in this Court. Based on this
17 history of litigation, it is obvious that Mr. Shupe knew that despite Cricket's advertising
18 "no contracts," Cricket phones actually did include a contract in the form of the T&C.
19 Thus, Mr. Shupe cannot plead reliance on the "no contracts" statements and therefore
20 cannot be damaged based on the misrepresentations. Accordingly, the fraud complaint
21 lacks merit since reliance and subsequent damages are two necessary elements for a fraud
22 claim under Arizona's consumer fraud statute.

23 In regards to Mr. Shupe's bad faith claim, several state courts within the Ninth
24 Circuit have found that there is no separate tort claim for "bad faith." Instead, bad faith is
25 part of a breach of contract claim. This presents somewhat of an anomaly. If Mr. Shupe is
26 given leave to amend his complaint and add a breach of contract claim, it would be
27 contradictory to his entire case because Mr. Shupe has claimed all along that he did not
28 know that there was a contract when signing up for Cricket's service. Therefore, to bring

a breach of contract claim would point to the fact that Mr. Shupe did in fact know that there was a contract, which would utterly defeat his other claim of consumer fraud. Because Mr. Shupe has already claimed that there was no contract between the parties, amending the bad faith claim would be futile and thus leave to amend should not be granted.

Furthermore, Mr. Shupe has been given three prior opportunities to draft a well-pleaded complaint to avoid dismissal and has failed each time in doing so, and it now appears certain that Mr. Shupe cannot do so. Given this history, the Magistrate Judge finds it clear that further attempts at amendment in this case will be futile and will only consume time and resources. Accordingly, the undersigned recommends Mr. Shupe should not be granted additional leave to file a fourth amended complaint.

## IV. RECOMMENDATION

In conclusion, the Magistrate Judge RECOMMENDS that the District Court GRANT Defendant's Motion to Dismiss and that Plaintiff's Third Amended Complaint be dismissed with prejudice.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. See id. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

If objections are filed, the parties should use the following case number: **CV 13-1052-TUC-JAS.**

**Dated this 16th day of October, 2014.**

Eric J. Markovich
United States Magistrate Judge